# Illinois Official Reports

## Appellate Court

---

### *People v. Gunn*, 2020 IL App (4th) 170653

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENDALL OMAR GUNN, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-17-0653 |
| Filed | January 21, 2020 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 08-CF-1381; the Hon. Charles M. Feeney III, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Bruce Kirkham, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion. Justices Cavanagh and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Kendall Omar Gunn, appeals from the second-stage dismissal of his amended petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2014)). Defendant argues this court should reverse the trial court's judgment because his amended postconviction petition made a substantial showing of a constitutional violation. We agree and reverse and remand for a third-stage evidentiary hearing.

¶ 2                                    I. BACKGROUND

¶ 3    In December 2008, the State charged defendant by indictment with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)) for causing the death of Shane Howard.

¶ 4    In May 2009, defense counsel filed a motion to suppress a statement 18-year-old defendant made to detectives after his arrest. The motion alleged "[d]efendant did not knowingly, intelligently and voluntarily waive his *Miranda* rights in that the [d]efendant's mental deficiencies prevented him from making a legally sufficient decision to waive those rights."

¶ 5    In September 2009, the trial court held a hearing on the motion to suppress. The court heard testimony from several detectives and two expert witnesses, a forensic psychiatrist and a clinical psychologist. The court denied the motion. In doing so, the court acknowledged defendant had a below-average intelligence.

¶ 6    On January 8, 2010, the trial court conducted a final pretrial conference. The court asked defense counsel whether, pursuant to the principles outlined in *People v. Zehr*, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984), and codified in Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), it should ask prospective jurors if they understood and accepted the fourth *Zehr* principle that a defendant's failure to testify cannot be held against him. Counsel replied, "You don't need to even deal with that, because he's going to testify, it's absolutely certain."

¶ 7    On January 11, 2010, the trial court commenced a jury trial. Prior to selecting a jury, the court again asked defense counsel if it should ask the jurors if they understood and accepted the fourth *Zehr* principle. Counsel confirmed the court need not conduct such an inquiry as defendant was going to testify.

¶ 8    In opening statement, defense counsel informed the jury it would hear defendant testify at trial. First, counsel said:

>      "You are going to hear about a lot of lies in this case. Some of them have been told by my client. He's going to tell you that he lied about a number of things when he was talking to police, and he's going to give you a reason why he lied. But the fact of the matter is, other people are going to tell you things that aren't true, too, and it isn't up to [the State] or [the defense] to say that one's lying and that one isn't. That's your decision, just like it's your decision to come to a conclusion at the end as to what actually happened."

At another point, counsel stated:

>      "You're going to hear a lot about my client from various people. You're going to hear speculation that he was a member of several gangs. Some people thought he was a member of the Gangster Disciples. Some people thought he was something called a moe, which is someone associated with another group called the P-stones. Other people

are going to tell you he wasn't in a gang. As a matter of fact, he's going to tell you he wasn't in a gang. But you're going to know by the end of the case here that he was friends with some people who were in gangs."

Finally, counsel told the jury:

"Now, the question about how many times he stabbed him I'm going to leave to the evidence in this case. It's not appropriate for me to talk to you about what I believe at this point in time. But I want you to listen carefully to that, because my client—from my client's perspective and the testimony that you will hear from him, is that he was trying to get Mr. Howard to back off. And he said, 'Stop. Get back.' And when you listen to the medical examiner about the nature of the wounds, I believe that's consistent with what my client said. Two of the wounds were not lethal wounds, one was. Mr. Howard kept coming towards my client. My client finely [*sic*] stabbed him."

¶ 9 The State presented evidence showing, on December 11, 2008, Howard brought a knife, strapped to his arm, to a residential party where alcohol and marijuana were consumed. A physical altercation transpired between several individuals at the party, including defendant and Howard. At some point, Howard lost, and defendant gained, possession of the knife. Defendant stabbed Howard with the knife, which caused Howard's death. In presenting its case, the State elicited testimony from several witnesses who were at the party. Through that testimony, the jury was provided with information suggesting Howard (1) was intoxicated and angry; (2) had been confrontational with defendant and others; (3) pulled out the knife during a confrontation with defendant and threatened to use it against him; (4) slammed defendant against a closet door, pulled defendant's shirt up over defendant's head, and placed the knife against defendant's throat; (5) punched defendant in the face while holding the knife in his hand; and (6) told defendant he was going to kill him. The State also presented an edited audio and video recording of a police interview involving defendant taken several hours after the stabbing. During the interview, defendant (1) admitted to stabbing Howard after Howard threw an object, possibly a liquor bottle, at him and ran toward him; (2) asserted he was not part of a gang despite being friends with members of a gang; (3) gave several explanations as to what he did with the knife after the stabbing; and (4) stated, "I ain't supposed to do it like that, I wasn't supposed to stab him to be for real cause he didn't, he didn't have nothing for me to be scared of no more. I could whip his ass you know what I'm saying and I was just in the heat of the moment because he had the knife and now I got the knife."

¶ 10 The defense presented testimony from two witnesses who were at the party. Through that testimony, the jury was provided with information suggesting (1) Howard was intoxicated, armed with a knife, and confrontational with defendant and others during the party; (2) Howard placed defendant up against a wall and told him he was going to take his life while holding the knife; and (3) Howard's friends told Howard to kill defendant while he was up against the wall. On the final day of trial, defense counsel informed the trial court the defense would rest without calling defendant to testify. The court then admonished defendant as follows:

"THE COURT: Okay. And [defendant], I need to admonish you personally, okay? The statements in this case were that you were going to testify, and you have an absolute Constitutional right to testify or to not testify, but it needs to be your election. Do you understand this?

[DEFENDANT]: Yes, sir.

THE COURT: Have you had an opportunity to discuss with [defense counsel] whether or not you wish to testify?

[DEFENDANT]: Uh-huh.

THE COURT: And they have advised you in that respect I take it?

[DEFENDANT]: Yes, sir.

THE COURT: And do you feel well-informed about this decision that you have made?

[DEFENDANT]: Yes, sir. I do.

THE COURT: It is my understanding that you do not wish to testify at this time, is that correct?

[DEFENDANT]: I do not."

¶ 11    At the jury-instruction conference, the trial court ruled, over the State's objection, it would instruct the jury on self-defense and second-degree murder based on imperfect self-defense.

¶ 12    In closing, the defense did not dispute defendant stabbed Howard with a knife. Instead, the defense argued defendant did so as a matter of self-defense or, alternatively, imperfect self-defense. The defense did not address the unfulfilled promise to present defendant's testimony. The State argued defendant had neither a reasonable nor unreasonable belief he needed to use force to protect himself. In so arguing, the State published to the jury portions of the audio and video recording of the police interview involving defendant and highlighted, in part, defendant's statement indicating he knew he had nothing to fear because he had the knife. The State also commented defendant "lied" to the police during the interview when he provided varying accounts to where he discarded the knife. In response to this comment, the defense argued the fact defendant "lied" did not "tell us about what happened at the party" and suggested it was simply an act done by an 18-year-old who felt "guilty" because he "stabbed somebody."

¶ 13    The trial court instructed the jury on self-defense and second-degree murder based on imperfect self-defense. The court also instructed the jury: (1) "Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded" and (2) "The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

¶ 14    Following deliberations, the jury found defendant guilty of first degree murder, and in March 2010, the trial court sentenced him to 35 years' imprisonment.

¶ 15    In May 2010, defendant appealed from his conviction and sentence, and this court affirmed. *People v. Gunn*, 2012 IL App (4th) 100397-U.

¶ 16    In February 2013, defendant filed a *pro se* postconviction petition, which later advanced to the second stage of postconviction proceedings. Appointed postconviction counsel supplemented defendant's *pro se* postconviction petition, and the State filed a motion to dismiss. Following a hearing, the trial court granted the State's motion to dismiss.

¶ 17    In December 2013, defendant appealed from the dismissal of his postconviction petition, and this court reversed and remanded for new second-stage proceedings, concluding defendant was denied reasonable assistance of postconviction counsel. *People v. Gunn*, 2015 IL App (4th) 131093-U.

¶ 18    In August 2016, newly appointed postconviction counsel filed an amended postconviction petition on defendant's behalf, which counsel later amended a second time. The amended petition alleged, in part, defendant's trial "[c]ounsel was ineffective regarding [defendant's] right to testify at trial." Specifically, the petition alleged the following:

> "Trial counsel was ineffective for objecting to the reading of the fourth *Zehr* principle on the basis that [defendant] would testify and for telling the jurors the petitioner was going to tell them certain things throughout the trial, when in fact he did not tell them anything because he never testified. Trial counsel's performance in telling the jury they will hear from [defendant] and then not following through falls well below the objective standard of reasonableness and meets the first prong of the *Strickland* test. Meeting the second prong of *Strickland*, [defendant] was prejudiced by trial counsel's performance as it lead to doubt in the eyes of the jury as to what [defendant] was hiding by not testifying when they were told from the beginning that he would be. Additionally, by not having the jurors questioned during *voir dire* regarding the fourth *Zehr* principle, [defendant] does not know how the jurors felt about not hearing from him at trial."

The petition further alleged defendant's appellate counsel was ineffective for failing to raise his claim of ineffective assistance of trial counsel on appeal from his conviction and sentence.

¶ 19    Postconviction counsel attached to the amended postconviction petition a personal affidavit of defendant, which averred, in part, the following: (1) "Throughout the trial preparation process, [trial counsel] and I agreed that I would testify at my jury trial"; (2) "During the pendency of the jury trial, it was still my intention to testify on my own behalf"; (3) "The morning of [the last day of trial], prior to the jury trial starting for the morning, [trial counsel] met with me just outside the courtroom to discuss whether I should testify"; (4) "[Trial counsel] advised me that she believed the jury had heard sufficient evidence so as not to convict me of first degree murder and advised me that my testimony was not necessary"; (5) "This was the first time [trial counsel] had indicated that I should not testify"; (6) "The meeting lasted no more than five to seven minutes"; (7) "I don't feel I was given adequate time to fully consider and understand the advice as it was sprung on me at the very last minute prior to the time I was to testify"; and (8) "Had I been given more time to consider this advice, I would have chosen to testify at my trial so I could explain the situation from my point of view."

¶ 20    In March 2017, the State filed a motion to dismiss defendant's amended postconviction petition, which it later amended. With respect to defendant's claim of ineffective assistance involving the right to testify, the amended motion argued, in part, the following: (1) the record showed defendant elected to not testify after being advised by counsel and admonished by the trial court the decision was his alone to make; (2) the "change in strategy" by trial counsel "was not unreasonable" as "[s]he probably believed that it would be unwise to subject defendant to cross[-]examination by a seasoned prosecutor, and instead rely upon favorable evidence that had already been introduced at trial which supported [defendant's] claim of self[-]defense"; and (3) defendant failed to establish he was prejudiced by any alleged error as there was no evidence to suggest the jury was not fair and impartial nor was there evidence showing the jury did not follow the court's instruction at the close of evidence that defendant's failure to testify could not be used against him. As to trial counsel's change in strategy, the motion highlighted the evidence introduced in the State's case-in-chief showing Howard brought the knife to the party, was intoxicated, was confrontational, brandished the knife, threatened

defendant with the knife, and got into a fight with defendant. The motion also highlighted the information counsel had showing defendant was intellectually slow and had told police he was not afraid of Howard after he obtained control of the knife.

¶ 21   In August 2017, the trial court, with the same judge who presided over the jury trial, held a hearing on the State's amended motion to dismiss defendant's amended postconviction petition. The State argued the points raised in its motion. With respect to defense counsel's change in strategy, the State specifically argued:

> "But trials are a dynamic thing. We all have a pretty good expectation about what probably is going to happen and what strategies we are probably going to use, but the way this case developed, her whole defense of self[-]defense, was really spelled out completely in the State's case-in-chief. It's highly unusual that it comes in that way. Counsel may very well have thought I'm going to leave well enough alone. You'll recall, because there was extensive testimony regarding the [m]otion to [s]uppress the statements that he made, and some of them were very damning to him, but all sorts of testimony was given by a psychiatrist and a psychologist as to his competency even to understand his *Miranda* rights and the ability to waive them. The testimony was he wasn't a very smart individual. She may very well have thought that undergoing cross from a seasoned prosecutor would just have destroyed him and further have given the State the opportunity to use the damning admissions that he made in the statement to the police against him."

In response, postconviction counsel argued defendant was well aware trial counsel was a seasoned attorney and "relied very heavily upon her advice in regards to whether or not he should testify." Postconviction counsel further argued:

> "[The State] argues that maybe it was her strategy that he ended up not testifying because of the fact that he—I think the words that he used was not very smart—and that he could have been tripped up by seasoned—the seasoned prosecutor that was at the trial at that point in time. But, your [h]onor, that wasn't the case. I mean, we can tell by the way that the opening statements unfolded, we can tell by the fact that she didn't want the fourth *Zehr* principle to be laid out there. She was going to have him testify, and then ultimately he didn't testify, and I believe that hurt [defendant] immensely because the whole—all along, the jury thought that they were going to hear from him and then they didn't."

Following arguments, the court dismissed defendant's petition, finding it failed to make a substantial showing of a constitutional violation. As to defendant's claim of ineffective assistance involving the right to testify, the court found the record showed defendant elected not to testify after being advised by counsel and admonished by the court the decision was his alone to make. The court further found:

> "And, at this point, it's not appropriate to say, well, that didn't work out well for him, I want a do-over, because maybe my trial would be different if I would have chosen to testify. That particular strategy didn't work.
>
> Trials are a dynamic thing, and we make our choices, and we have to live with them in that regard. And so the fact that [trial counsel] initially anticipated having the defendant testify, and then given the state of the evidence chose to change strategy in the middle of a trial, that's not that unusual. There's lots of times a defense attorney might choose to not call a particular witness or might in this instance choose to have a

defendant, client, testify or not testify, contrary to what was originally planned. Why would they do that? Well, because trials are dynamic. And, as [the State] mentioned, it may be, or may not—I'm not going to speculate—but there was evidence in [m]otions to [s]uppress regarding the intellectual capacities of the defendant, and it's possible that counsel looked at that and said there's a pretty substantial risk of harm to our case by exposing the defendant to cross[-]examination by an experienced trial counsel. I don't know, and I'm not going to speculate on that, but what is important is, is it wasn't ineffective assistance of counsel. It was the best efforts of a counsel. It was a personal election made by the defendant after the defendant was chose—chose what course he wished to pursue after being informed by the [c]ourt even of what his rights were. And, given that, it's not ineffective. I don't know that it would have changed anything in this case. It may or may not have, but it's speculation to say what a jury would have done or did as a result of being told that he would testify and then he didn't testify. It's speculation that—that they would just tell, you know, basically treat the [c]ourt's instructions with utter disregard. That, in fact, not only is there speculation on that point, I think it's fair to say that the—a jury would follow the [c]ourt's instructions. And that instruction seems curative. This one *Zehr* principle is—can be either given or not given at the choice of the defense. But it is—if the defendant chooses to testify, then that *Zehr* principle is irrelevant. If the defendant chooses not to testify, then the jury is already informed in a jury instruction, like they have been for the history of our country, for the most part, I think, that, hey, he has a right to remain silent. You can't hold that against him. And that's exactly what this jury was told.

   So I don't think there's any merit to ineffective assistance of counsel as to the defendant's right to testify."

¶ 22    This appeal followed.


¶ 23                                II. ANALYSIS
¶ 24    On appeal, defendant argues this court should reverse the trial court's judgment because his amended postconviction petition made a substantial showing of a constitutional violation. Specifically, defendant contends he made a substantial showing of ineffective assistance of trial and appellate counsel based on trial counsel's unfulfilled promise to present his testimony and waiver of his right to have the court inquire about the fourth *Zehr* principle. Defendant requests the matter be remanded for a third-stage evidentiary hearing concerning the factual question of whether counsel's actions constituted a valid trial strategy.

¶ 25    The Act (725 ILCS 5/122-1 to 122-7 (West 2014)) "provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both." *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The adjudication of a postconviction petition follows a three-stage process. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615. In this case, defendant's amended postconviction petition was dismissed at the second stage. We review a trial court's second-stage dismissal *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29, 124 N.E.3d 908.

¶ 26    At the second stage of postconviction proceedings, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Johnson*, 2018 IL 122227, ¶ 15, 123 N.E.3d 1083. In

making this determination, the court accepts all well-pleaded facts as true, unless they are affirmatively refuted by the record. *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. The defendant bears the burden of making a substantial showing of a constitutional violation. *Id.*

¶ 27 "The sixth amendment [(U.S. Const., amend. VI)] guarantees a criminal defendant the right to effective assistance of trial counsel at all critical stages of the criminal proceedings ***." *People v. Brown*, 2017 IL 121681, ¶ 25, 102 N.E.3d 205. Claims of ineffective assistance of counsel are governed by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246, 1255-56 (1984) (adopting *Strickland*). To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687; *Brown*, 2017 IL 121681, ¶ 25.

¶ 28 To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel's performance was so "inadequate 'that counsel was not functioning as the "counsel" guaranteed by the sixth amendment.' " *Dupree*, 2018 IL 122307, ¶ 44 (quoting *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999)). To satisfy the prejudice prong of *Strickland*, the defendant must demonstrate "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 29 "A counsel's failure to provide promised testimony is not ineffective assistance *per se*." *People v. Manning*, 334 Ill. App. 3d 882, 892, 778 N.E.2d 1222, 1230 (2002). This is because, as the trial court noted in this case, trials are dynamic. To determine whether the failure to provide promised testimony amounts to ineffective assistance, we must look to the factual circumstances of a given case.

¶ 30 In this case, the record, including the well-pleaded facts in defendant's amended postconviction petition and accompanying affidavit, shows both defendant and his trial counsel anticipated defendant testifying up until the last day of trial. Trial counsel, therefore, (1) waived defendant's right to have the trial court ask prospective jurors whether they understood and accepted the fourth *Zehr* principle and (2) promised the jury defendant would testify and explain "why he lied" to the police, that "he wasn't in a gang," and that he stabbed Howard when he was trying to get him to " '[s]top' " and " '[g]et back.' " On the last day of trial, trial counsel changed course and advised defendant "she believed the jury had heard sufficient evidence so as not to convict [defendant] of first[-]degree murder and [his] testimony was not necessary." Based on counsel's advice, defendant elected not to testify after being admonished by the trial court the decision was his alone to make and statements had been previously made suggesting he was going to testify.

¶ 31 On this record, we are not presented with a situation where a defendant who expressed a pretrial desire to testify simply changed his mind and choose not to testify when given the opportunity. *Cf. People v. Gordon*, 2016 IL App (1st) 134004, ¶ 43, 56 N.E.3d 467. Instead, we are presented with the situation where counsel, as a matter of trial strategy, changed course midtrial and advised defendant his testimony was not necessary, which defendant relied upon when electing not to testify.

- 8 -

¶ 32    Under the deficiency prong of *Strickland*, defendant asserts he made a substantial showing counsel's decision to change course and advise him his testimony was not necessary was constitutionally inadequate. The State disagrees, asserting this court should presume counsel's decision and advice was the result of sound trial strategy and, even taking defendant's affidavit as true, the alleged basis of counsel's decision and advice, that the jury had heard sufficient evidence so as not to convict him of first degree murder, was not objectively unreasonable.

¶ 33    We reject the State's suggestion we should presume at this stage trial counsel's decision to change course and advise defendant his testimony was not necessary was the result of sound trial strategy. In support of its position, the State relies on *Manning*. In that case, the court was asked to evaluate on appeal from a conviction the merits of a claim of ineffective assistance based on a trial counsel's failure to present promised testimony. *Manning*, 334 Ill. App. 3d at 886. The court presumed counsel's decision not to present the promised testimony was the result of trial strategy as the record failed to show whether counsel's decision was due to defendant simply changing his mind and choosing not to testify, sound trial strategy, or incompetence. *Id.* at 893. In so presuming, the court explicitly declined to address matters outside the record. *Id.* at 893-94. Unlike *Manning*, defendant has pursued his claim through a postconviction proceeding, the type of proceeding where counsel's basis for changing course and advising defendant not to testify can be developed. See *People v. Talbert*, 2018 IL App (1st) 160157, ¶ 53, 122 N.E.3d 739 ("Where the record is silent as to counsel's strategy, the defendant's ineffective assistance of counsel claim may be more appropriately raised in a collateral proceeding."). At this stage in the postconviction proceedings, we will not presume counsel's decision to change course and advise defendant his testimony was not necessary was the result of sound trial strategy.

¶ 34    We also reject the State's argument suggesting the alleged basis of trial counsel's decision to change course and advise defendant his testimony was not necessary, that the jury had heard sufficient evidence so as not to convict him of first degree murder, was not objectively unreasonable as a matter of law. The determination of whether the alleged basis of counsel's decision and advice was unreasonable turns on whether an unforeseeable event occurred at trial. See *People v. Briones*, 352 Ill. App. 3d 913, 918, 816 N.E.2d 1120, 1124 (2004) (" '[W]hen the failure to present the promised testimony cannot be chalked up to unforeseeable events, the attorney's broken promise may be unreasonable, for "little is more damaging than to fail to produce important evidence that had been promised in an opening." ' " (quoting *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003), quoting *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988))); see also *Ouber v. Guarino*, 293 F.3d 19, 27 (1st Cir. 2002) (finding trial counsel's opening statements, in conjunction with the decision to advise his client not to testify, was ineffective assistance "in the absence of unforeseeable events forcing a change in strategy"). Counsel did not provide any explanation at trial suggesting an unforeseeable event occurred to justify the change in strategy, nor do we find the occurrence of such an event in our review of the cold record. Had it been reasonably foreseeable that sufficient evidence would have been presented so as not to convict defendant of first degree murder at the time counsel waived the inquiry about the fourth *Zehr* principle and promised the jury they would hear from defendant, counsel's later decision to change course and advise defendant his testimony was not necessary would be unsound. See *Leibach*, 347 F.3d at 259 ("Making *** promises and then abandoning them for reasons that were apparent at the time the promises were made cannot be described as legitimate trial strategy.").

At this stage in the postconviction proceedings, we find defendant made a substantial showing counsel's decision to change course and advise him his testimony was not necessary was constitutionally inadequate.

¶ 35 Under the prejudice prong of *Strickland*, defendant asserts he made a substantial showing he was prejudiced by trial counsel's decision to change course and advise him his testimony was not necessary. The State disagrees, asserting defendant's testimony would have been cumulative and nothing in the record suggests the jury did not follow the jury instructions.

¶ 36 We reject the State's argument suggesting defendant's testimony would have been entirely cumulative. In opening statement, defendant's trial counsel told the jury defendant would testify and explain "why he lied" to the police. No evidence was introduced explaining why defendant "lied" to the police. Absent defendant's testimony, the jury was left simply with trial counsel's description of defendant as a liar.

¶ 37 We also reject the State's argument suggesting the jury instructions cured any prejudice suffered by defendant. While the giving of an instruction is "a factor to be considered in determining the prejudice to defendant," it "is not always curative." *People v. Bunning*, 298 Ill. App. 3d 725, 729, 700 N.E.2d 716, 720 (1998). As a general proposition, "unfulfilled promises to present personal testimony from a criminal defendant are highly suspect under *Strickland*." *Barrow v. Uchtman*, 398 F.3d 597, 607 (7th Cir. 2005); see also *People v. Bryant*, 391 Ill. App. 3d 228, 242, 907 N.E.2d 862, 874-75 (2009) (noting the failure to present testimony from a defendant after promising to do so is "highly prejudicial"). This is because " '[p]romising a particular type of testimony creates an expectation in the minds of jurors, and when defense counsel without explanation fails to keep that promise, the jury may well infer that the testimony would have been adverse to his client and may also question the attorney's credibility.' " *Briones*, 352 Ill. App. 3d at 918 (quoting *Leibach*, 347 F.3d at 259); see also *Ouber*, 293 F.3d at 28 ("When a jury is promised that it will hear the defendant's story from the defendant's own lips, and the defendant then reneges, common sense suggests that the course of trial may be profoundly altered. A broken promise of this magnitude taints both the lawyer who vouchsafed it and the client on whose behalf it was made."); *People v. Winkfield*, 2015 IL App (1st) 130205, ¶ 1, 41 N.E.3d 641 ("As prosecutors and criminal defense attorneys know, few assertions can wreck one's case more than an unfulfilled promise made to a jury in opening statements."). In this case, trial counsel not only made a generalized promise to present testimony from defendant but promised the jury defendant would testify and explain "why he lied" to the police, that "he wasn't in a gang," and that he stabbed Howard while trying to get him to " '[s]top' " and " '[g]et back.' " While the jury had the benefit of the audio and video recording of the police interview, we find defendant's testimony was critical in light of the closely balanced evidence on the question of whether he stabbed Howard based on an unreasonable belief in his need to exercise self-defense. Given the specific promises made by counsel and the fact the evidence of guilt was not overwhelming, we find defendant made a substantial showing he was prejudiced by counsel's decision to change course and advise him his testimony was not necessary.

¶ 38 We find a third-stage evidentiary hearing is warranted to allow trial counsel to be called as a witness to develop a record concerning why she changed course midtrial and advised defendant his testimony was not necessary despite previously waiving defendant's right to have the trial court ask prospective jurors whether they understood and accepted the fourth *Zehr* principle and promising the jury defendant would testify and explain "why he lied" to the

police, that "he wasn't in a gang," and that he stabbed Howard while trying to get him to " '[s]top' " and " '[g]et back.' "

¶ 39                                    III. CONCLUSION
¶ 40            We reverse the trial court's judgment and remand for a third-stage evidentiary hearing.

¶ 41            Reversed and remanded.