**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220329-U

Order filed September 26, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0329 Circuit No. 12-CF-193 |
| | ) | |
| TOMMY L. CROCKWELL, | ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Peterson and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) Appellate counsel was not ineffective for failing to raise a meritless claim on direct appeal. (2) Trial counsel was ineffective for abandoning an alibi defense mid-trial to pursue an inapplicable legal defense.

¶ 2    Defendant, Tommy Crockwell, appeals the second-stage dismissal of one of his postconviction claims, and the third-stage dismissal of his remaining claim. For the reasons that follow, we affirm in part, reverse in part, and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was convicted of first degree murder and sentenced to 50 years' imprisonment. He appealed, arguing his trial counsel was ineffective for abandoning an alibi defense in favor of a frivolous legal argument. See *People v. Crockwell*, 2019 IL App (3d) 170089-U. We affirmed, holding his claims were better suited for postconviction proceedings where a sufficient record could be developed. The facts of this case are recited in the direct appeal and will not be replicated here, except as necessary for context.

¶ 5        In October 2011, Johnny Rouse was shot and killed in a park. In January 2012, police obtained judicial approval for an eavesdropping device. Anton Davis, a longtime friend of defendant, wore eavesdropping equipment that audio- and video-recorded a conversation in defendant's home during which defendant admitted he killed Rouse. Defendant was arrested and charged with two counts of first degree murder. 720 ILCS 5/9-1(a)(1) (West 2012). The trial court denied defendant's motion to suppress the recorded confession to Davis. The trial court thereafter heard and denied defendant's motion to reconsider and five amended motions to reconsider.

¶ 6        The trial began as a jury trial. During opening statements, trial counsel told the jury defendant "isn't the brightest man on earth." Defendant "came up with a stupid plan" to protect his son who was rumored to be the shooter. Trial counsel also told the jury it would hear from Leroy Wright who was driving defendant home at the time of the shooting. On the second day of trial, trial counsel told the court he was still planning on calling defendant and two alibi witnesses to testify. On the third day of trial, before the State finished its case-in-chief, defendant decided to waive the jury on advice of counsel, so the court could decide the case. Once the State rested, trial counsel moved for a directed finding but asked to reserve argument until closing statements. When court reconvened, trial counsel stated he was not going to put on a defense.

"TRIAL COUNSEL: After speaking to my client, we do not wish to present any evidence and the defendant does not wish to testify. We would ask [Y]our Honor inquire.

THE COURT: Originally you had something about an alibi.

TRIAL COUNSEL: That is correct, [Y]our Honor.

THE COURT: Going by your opening statement.

TRIAL COUNSEL: That is correct, [Y]our Honor. We do not wish[,] and I have spoken with Mr. Crockwell regarding this, of putting [*sic*] forward any evidence. We believe—in my closing argument I believe that we can show [Y]our Honor that the State has not proven their case beyond a reasonable doubt. Based on that, [Y]our Honor, we do not wish to put on any further evidence."

Defendant then formally rested.

¶ 7        During closing argument, trial counsel argued the State did not satisfy the doctrine of *corpus delicti*, because "[t]he law in the state of Illinois is exceptionally clear that a person cannot legally be found guilty based on his statement alone." He alleged there was no independent evidence, besides defendant's recorded confession to Davis, showing defendant was involved in the shooting. The court denied defendant's motion for a directed finding and subsequently found him guilty.

¶ 8        After defendant's conviction was affirmed on direct appeal, he filed a postconviction petition, alleging (1) appellate counsel was ineffective for failing to raise the trial court's error in denying the motion to suppress the recorded confession, and (2) trial counsel was ineffective for foregoing a viable alibi defense. The petition included affidavits of defendant, trial counsel, and two alibi witnesses who would have testified at the criminal trial. The State moved to dismiss the

3

petition, arguing the evidence against defendant was overwhelming. The trial court dismissed defendant's claim regarding appellate counsel and advanced the claim regarding trial counsel to an evidentiary hearing.

¶ 9       The hearing spanned two days, during which defendant, the two alibi witnesses, and trial counsel testified. Defendant testified as follows. He wanted to testify at his criminal trial and trial counsel prepared him to testify. At the beginning of trial, defendant and two alibi witnesses were going to testify. But on the third day of trial, trial counsel told defendant he wanted to change the course of trial and pursue the legal argument of *corpus delicti*. Trial counsel explained this meant defendant could not be convicted on his confession alone, and he recommended that defendant not testify in his own defense. Defendant, relying on this advice, did not testify.

¶ 10       In his testimony, trial counsel stated, "I still believe as I sit here now the *corpus delicti* means more than just did a crime happen. It also switches over to can we prove that Tommy was part of it and words alone just saying you did something, words alone is [*sic*] not enough."

¶ 11       The trial court denied defendant's postconviction petition in a written ruling:

> "It is clear from all the evidence presented that trial counsel made a strategic decision to forgo calling the alleged alibi witnesses. Both alleged alibi witnesses' testimony were not absolute as to the exact time that they were with Petitioner.
>
> * * *
>
> It is clear to the Court that trial counsel proceeded in the manner that he did based upon sound legal strategy and that he discussed this with his client. Therefore, Petitioner's claim that trial counsel was ineffective and that he was prejudiced as a result by this claim is denied."

Defendant appeals.

¶ 12                                    II. ANALYSIS

¶ 13        Defendant argues (1) the trial court erred in denying defendant's petition at the second stage where he made a substantial showing that the eavesdropping audio was erroneously admitted against him at trial, and (2) the trial court erred in denying defendant's postconviction petition at the third stage where he established trial counsel was ineffective for failing to present an alibi defense and instead pursuing a frivolous legal theory of *corpus delicti*. The State contends (1) defendant did not make a substantial showing that the admission of the eavesdropping audio was an abuse of discretion, and (2) trial counsel's decision to not present the testimony of imperfect alibi witnesses was a matter of sound trial strategy based on the facts of the case.

¶ 14        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2020)) "provides a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial." *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). The Act "contains a three-stage procedure for relief." *People v. Allen*, 2015 IL 113135, ¶ 21. At the first stage, the trial court dismisses petitions that are frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). Petitions that are not dismissed are advanced to the second stage. 725 ILCS 5/122-2.1(b) (West 2020). At the second stage, the State may file a motion to dismiss. 725 ILCS 5/122-5 (West 2020). "At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Edwards*, 197 Ill. 2d at 246. "If no such showing is made, the petition is dismissed" *Id*. "If, however, a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing." *Id*. "At such a hearing, the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the

weight to be given testimony and evidence, and resolve any evidentiary conflicts." *People v. Domagala*, 2013 IL 113688, ¶ 34.

¶ 15                                   A. Eavesdropping Audio

¶ 16        Defendant argues appellate counsel was ineffective for failing to argue on direct appeal that the eavesdropping audio was erroneously admitted at trial. "At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "A [defendant] who contends that appellate counsel rendered ineffective assistance of counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner." *People v. Childress*, 191 Ill. 2d 168, 175 (2000). "Unless the underlying issue is meritorious, petitioner suffered no prejudice from counsel's failure to raise it on direct appeal." *Id*.

¶ 17        An application for judicial approval to use an eavesdropping device must include details of the felony, a description of the type of communication to be monitored, the identity of the party consenting to the eavesdropping device, and the identity of the person whose conversations are to be overheard. 725 ILCS 5/108A-3(a)(2) (West 2012). The judge may authorize the use of the eavesdropping device where the judge finds that one party consented, there is reasonable cause for believing an individual committed a felony, and there is reasonable cause to believe particular conversations concerning the felony offense will be obtained. 725 ILCS5/108A-4 (West 2012). " 'Reasonable cause' as used in the eavesdropping statute is synonymous with 'probable cause' and is established when the totality of the circumstances is sufficient to warrant the belief by a reasonable person that an offense has been, is being, or will be committed." *People v. Calgaro*,

6

348 Ill. App. 3d 297, 301 (2004). "Unlike situations involving search warrants, in determining the existence of reasonable cause courts should not be unduly technical." *People v. White*, 209 Ill. App. 3d 844, 877 (1991). "An application to use an eavesdropping device should be viewed in a commonsense manner and the issuing judge's conclusions that reasonable cause exists should be given great deference when reviewed by subsequent judges." *Calgaro*, 348 Ill. App. 3d at 301.

¶ 18     Defendant argues the application lacked sufficient factual basis because it did not state why the informant believed he could engage defendant in further conversation about the murder, what the informant's relationship was with defendant, or how the information could be deemed reliable. According to defendant, the recording was the only inculpatory evidence introduced against defendant at trial, and appellate counsel's failure to raise the issue was objectively unreasonable. The State argues defendant offers no new theory or additional argument to support the claim that appellate counsel was ineffective for failing to argue that the recorded confession was improperly admitted. We agree with the State.

¶ 19     The application requested to monitor both person-to-person and telephone conversations between Davis and defendant. The application provided

> "On October 26 Johnny B. Rouse *** was the victim of a murder in University Park, Will County, IL. Within the past two days [police] spoke to [Davis], a confidential informant, who wishes to remain anonymous for fear of retaliation. [Davis] related that [defendant] admitted to [Davis] that [defendant] had shot the victim Rouse in the back of the head. [Defendant] provided details of the murder to [Davis] that only a person that was present during the murder would know. [Police were] able to confirm that the details were consistent with that of the crime scene. [Davis] also believed he could engage [defendant] in further conversation about the

7

murder in the future and has agreed to wear a recording device during these conversations."

Davis was present with police when the application was submitted to the court. Upon examining the written application, the court found (1) Davis consented to the use of an eavesdropping device, (2) there was reasonable cause for believing defendant had committed first degree murder, and (3) there was reasonable cause for believing that particular conversations concerning that felony would be obtained.

¶ 20    At the second stage of postconviction proceedings, a petition must make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. We find defendant did not make the requisite showing, and the trial court properly dismissed this claim at the second stage. The application for the eavesdropping device met the statutory requirements. It was not required to be overly technical. Contrary to defendant's claim, the application's factual basis was not wholly devoid of details. Thus, an appeal of this issue had no merit, and appellate counsel was not deficient for failing to pursue it. *People v. Stone*, 2018 IL App (3d) 160171, ¶ 20. Where appellate counsel was not deficient, defendant's ineffective-assistance argument fails. Accordingly, we affirm the trial court's second-stage dismissal of defendant's claim that appellate counsel was ineffective.

¶ 21                        B. Ineffective Assistance of Trial Counsel

¶ 22    Defendant also contests the third-stage dismissal of his postconviction petition as it relates to the claim that his trial counsel was ineffective. "After an evidentiary hearing where fact-finding and credibility determinations are involved, the circuit court's decision will not be reversed unless it is manifestly erroneous." *People v. English*, 2013 IL 112890, ¶ 23. "Manifest error is clearly evident, plain, and indisputable." *People v. Coleman*, 2013 IL 113307, ¶ 98. "Thus, a decision is manifestly erroneous when the opposite conclusion is clearly evident." *Id*.

8

¶ 23    "The effective assistance of counsel refers to competent, not perfect, representation." *People v. Lemke*, 349 Ill. App. 3d 391, 398 (2004). To prevail on an ineffective assistance claim, a defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376 (2000).

¶ 24    "In assessing counsel's performance, the reviewing court must indulge in a strong presumption that counsel's conduct fell into a wide range of reasonable representation, and the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *People v. Cloutier*, 191 Ill. 2d 392, 402 (2000). Trial strategy includes an attorney's decisions regarding a theory of defense and calling witnesses. *People v. Cundiff*, 322 Ill. App. 3d 426, 435 (2001); *Enis*, 194 Ill. 2d at 378. However, a "mistake as to the law can be a basis for finding that an attorney was ineffective." *People v. Patterson*, 192 Ill. 2d 93, 121 (2000). "A defendant may overcome the strong presumption that the challenged action or inaction of counsel was a matter of sound trial strategy by showing that counsel's decision was so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *People v. Morris*, 2013 IL App (1st) 110413, ¶ 74.

9

¶ 25 Defendant argues, and the State concedes, that the doctrine of *corpus delicti* did not apply to the facts of this case. "In Illinois, the State is required to prove beyond a reasonable doubt two basic propositions at trial: (1) that a crime occurred, *i.e.*, the *corpus delicti*; and (2) that the crime was committed by the person charged." *People v. Underwood*, 2019 IL App (3d) 170623, ¶ 10. "The *corpus delicti* of an offense is simply the commission of a crime." *People v. Lara*, 2012 IL 112370, ¶ 17. "The *corpus delicti* rule requires only that the corroborating evidence correspond with the circumstances recited in the confession and tend to connect the defendant with the crime." *Id*. at ¶ 51. It was quite obvious a crime had occurred when the victim's body was found in the park. And it was obvious that the other evidence in the case tended to connect defendant with the crime. Trial counsel thus gravely misunderstood the doctrine of *corpus delicti*.

¶ 26 Trial counsel's mistake could have been remedied had he argued his motion for a directed finding at the close of the State's case-in-chief, rather than reserve argument for closing, after the defense had rested. "A motion for a directed finding asserts only that, as a matter of law, the evidence is insufficient to support a finding of guilty." *People v. Lawson*, 2015 IL App (2d) 140604, ¶ 17. Had trial counsel argued his motion for a directed finding at the close of the State's case-in-chief, the motion would have been denied, and he would have been free to put on a defense. Instead, trial counsel waited until after he had formally rested to present his flawed *corpus delicti* argument, thereby forfeiting the opportunity to put on any kind of defense. This left defendant's recorded confession entirely unrebutted. See *People v. Gunn*, 2020 IL App (4th) 170653, ¶ 36.

¶ 27 We speculated in the previous appeal as to why trial counsel did not call the alibi witnesses. See *Crockwell*, 2019 IL App (3d) 170089-U, ¶ 21. Trial counsel's affidavit and testimony at the evidentiary hearing make it clear his decision was not due to any lack of confidence in the alibi witnesses, but rather was based on his misunderstanding of *corpus delicti*. Such an adoption of an

all-or-nothing approach, based on a misunderstanding of the law, amounts to deficient performance for purposes of an ineffective assistance of counsel claim. See *Lemke*, 349 Ill. App. 3d at 399.

¶ 28 The trial court's ruling that trial counsel's actions were grounded in sound trial strategy is manifestly erroneous. Trial counsel's misunderstanding of *corpus delicti*, combined with his decision to argue his theory of *corpus delicti* only after formally resting left defendant unable to put on a defense. This decision was unreasonable and no rational attorney in trial counsel's position would have made the same choice. *Morris*, 2013 IL App (1st) 110413, ¶ 74.

¶ 29 Trial counsel's deficiencies prejudiced defendant such that he was deprived of a fair trial. By not putting on any defense, defendant was not able to explain his inculpatory statements to Davis, and his two alibi witnesses never testified. Defendant wanted to and was prepared to testify, but he decided to follow his trial counsel's advice. The State suggests the alibi witnesses were imperfect, but even so, a "perfect alibi" is incredibly rare. In any event, defendant was not required to show the outcome of the trial would have been different absent counsel's deficient performance; he was required only to show a *reasonable probability* of a different outcome. *Strickland*, 466 U.S. at 694. In light of the record before us, we conclude he has met that burden where trial counsel's unreasonable strategic choice ensured his conviction. Therefore, we reverse the trial court's denial of defendant's claim regarding trial counsel and remand for a new trial.

¶ 30                                    III. CONCLUSION

¶ 31 The judgment of the circuit court of Will County is affirmed in part, is reversed in part, and remanded for a new trial.

¶ 32 Affirmed in part, reversed in part, and remanded.

11